# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**EDGAR HANSON**  **CIVIL ACTION NO:**
**Plaintiff,**

**V.**

**VOLUNTEERS OF AMERICA TEXAS**
**Defendant.**

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES, NOW COMES** EDGAR HANSON, hereinafter called Plaintiff, complaining of and about VOLUNTEERS OF AMERICA, TEXAS INC., hereinafter called Defendant or "VOA", and for cause of action, would show unto the Court the following:

## I.
## PARTIES AND SERVICE

1. Plaintiff, Plaintiff, EDGAR HANSON, is an individual whose address is 4100 Main Street, Apt. C, Dallas, Texas 75226.

2. Defendant, VOLUNTEERS OF AMERICA TEXAS INC. ("VOA"), is an organization with the listed address of 300 East Midway Drive, Euless, Texas 76039 and represented by Christine Shippee at 1717 Main Street, Suite 3400, Dallas, Texas 75201. Actions giving rise to this suit occurred at the location in Hutchins, Texas, in Dallas County.

## III. JURISDICTION AND VENUE

3. Plaintiff brings this action under the ADA and Section 504, a federal statute that confers jurisdiction on this Court. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a)(3)(4). The Court also has supplemental jurisdiction over the claims brought under state law.

4. Venue in the Northern District of Texas is proper because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Dallas County, which is located in this district.

## IV. FACTS

5. In May 2020, Plaintiff Edgar Hanson underwent hip replacement surgery while incarcerated at Texarkana FCI.

6. As a result of the surgery, Mr. Hanson was in severe pain which placed several limitations upon him. Specifically, Mr. Hanson had difficulty walking without pain. Mr. Hanson also required beds that were high enough off the ground so he would not have to bend down to get on the bed.

7. In June 2020, Mr. Hanson was released to home confinement. On November 11, 2020, Mr. Hanson was asked to surrender to the custody of VOA for a violation of his terms of release because he had consumed a beer that afternoon.

8. At the time he surrendered, Mr. Hanson informed officials at VOA that his doctor had ordered that he be supplied with a bed that was high off the floor during his recovery. Mr. Hanson further informed officials at VOA that the bed that he was provided with, which was only 12-24 inches off the ground, was too low for him to safely navigate and the low height caused him significant pain. While at VOA, Mr. Hanson continually complained that his bed was too low and causing him pain.

9. Further, Mr. Hanson's file also disclosed that Mr. Hanson's doctor had ordered that he be supplied with a bed that was high off the floor during his recovery. Indeed, his file made clear that, instead of being placed at VOA, officials at VOA should

have notified the United States Marshal Service of Mr. Hanson's violation and had him placed at the Federal Medical Center in Fort Worth, Texas.

10. Despite Mr. Hanson's complaint and the notes in his files, VOA provided Mr. Hanson with a bed that was only a 12-24 inches off the ground, and did not provide him with a new bed when he made them aware of the need for the accommodation.

11. On November 14, 2020, as a result of VOA's failure to provide him with a bed of sufficient height to accommodate his disability, Mr. Hanson's hip "popped" while trying to get low enough to get onto the 12-24 inch bed to go to sleep. Mr. Hanson then laid in bed all night in great pain all night, unable to get up and walk. The next morning, several other inhabitants at VOA arrived from their work detail and helped Mr. Hanson get up.

12. Mr. Hanson requested an ambulance to go to the hospital but officials at VOA refused to call an ambulance. Mr. Hanson remained in great pain due to the refusal to call an ambulance. Eventually, one of the counselors at VOA informed Mr. Hanson that he could have his son pick him to take him to the hospital.

13. At the hospital, Mr. Hanson was diagnosed with a stress fracture of the hip.

**COUNT ONE:**
**VIOLATION OF THE AMERICAN WITH DISABILITIES ACT& SECTION 504 OF THE REHABILITATION ACT AS TO INSTITUTIONAL DEFENDANTS TDCJ AND DALLAS SHERIFF'S DEPARTMENT**

14. Plaintiff hereby adopts incorporates, restates and re-alleges each of the preceding paragraphs.

15. Title II of the Americans With Disabilities Act (hereinafter "ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity. A public entity includes any department, agency,

special purpose district, or other instrumentality of a State, or States or Local Government.

16. Section 504 of the Rehabilitation Act of 1973 provides that no otherwise qualified individual with a "disability" shall, solely by reason of his or her disability, be excluded from the participation and, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal or financial assistance.

17. A program or activity includes all of the operations of a department, agency, special purpose district, or other instrumentality of a State, or of a Local Government. A disabled Plaintiff can succeed in an action under Title II of the ADA or Section 504 of the Rehabilitation Act if such person can demonstrate that, by reason of such person's disability, he was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such entity.

18. Defendant Volunteers of America is a recipient of federal financial assistance, and is therefore covered by the mandate of Section 504 & the ADA, which requires that recipients of federal monies reasonably accommodate persons with disabilities in their facilities, program activities, and services, and reasonably modify such facilities, services, and programs to accomplish this purpose.

19. Mr. Hanson had a hip replacement in May 2020, and suffered from severe hip pain as he recovered. The hip replacement and hip pain substantially limited one or more of Mr. Hanson's life activities, including the ability to walk and sleep, making it a recognized disability under the ADA. 42 U.S.C. § 12101(2). Accordingly, Mr. Hanson was entitled to protection under the ADA and the Rehabilitation Act.

20. At all times, VOA administrators and staff had substantial knowledge and notice of

Mr. Hanson's disability. Despite this knowledge, VOA administrators and staff refused to accommodate Mr. Hanson's disability by providing him a bed of sufficient height for him to safely get into, which was necessary for him to conduct ordinary life activities such as sleeping. Indeed, VOA provided him with a bed that was only 12-24 inches of the ground and did not arrange for him to be transferred to FMC Fort Worth.

21. VOA's refusal to reasonably accommodate Plaintiff Hanson's disabilities proximately caused him injury and pain.

22. Plaintiff Hanson therefore seek to recover compensatory (including but not limited to pain and suffering and lost wages) and punitive damages, attorney's fees, expenses, costs and any other relief permitted under the law as a result of the foregoing violations of the ADA and the Rehabilitation Act.

### COUNT TWO: NEGLIGENCE

23. Plaintiff hereby incorporates by reference each of the above paragraphs by reference.

24. Defendant VOA owed a duty of care to Mr. Hanson.

25. Defendant VOA breached that duty of care owed to Mr. Hanson by:

- Failing to heed the orders and recommendations of Plaintiff's medical providers.
- Failing to provide appropriate furnishings as a facility using ordinary care would have done.
- Forcing Plaintiff to sleep on a bed that was too low for him to safely use.
- Failing to provide a safe sleeping space as required.
- Failing to communicate to all relevant employees the needs of and accommodations required by Plaintiff.

26. As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendant negligent acts and conduct, as described hereinbefore, Plaintiff EDGAR HANSON, incurred the following damages:

- Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff EDGAR HANSON for this necessary care and treatment of the injuries resulting from the acts complained herein and such charges are reasonable and were usual and customary charges for such services in DALLAS County, Texas;
- Reasonable and necessary medical care and expenses which will, in all reasonable probability, be incurred in the future;
- Loss of earnings in the past;
- Loss of earning capacity which will, in all probability, be incurred in the future;
- Future and past mental anguish;
- Such and other further relief to which Plaintiff may be justly entitled;

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, EDGAR HANSON, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiff may be entitled, at law or in equity.

Respectfully submitted,

    /s/ Dimitri Dube

Dimitri Dube
State Bar No. 24068944 Dimitri
Dube PC
325 N. St. Paul, Suite 2750
Dallas, TX 75201
972.975.2010 fax
dd601@nyu.edu
 Dimitri Dube

ATTORNEY FOR PLAINTIFF


      /s/ Ezekiel Tyson
Ezekiel Tyson Jr.
State Bar No. 24034715
342 W. Montana Ave.
Dallas, Texas 75224
Telephone: 214-942-9000
Facsimile: 214-942-9001
Tyson@tysonpc.com


ATTORNEYS FOR PLAINTIFF